# THE FIDELITY AND DEPOSIT COMPANY OF MARYLAND

## *vs.*

## MINNIE J. HUSTED, Guardian of Mortimer J. Husted and Marcia T. Husted.

*Testamentary guardians: revocation and discharge.*

Under the provisions of sections 187 and 242 of Article 93, a guardian's appointment may, upon his application, be revoked, and the guardian may be discharged from further liability when he has fully accounted for the ward's estate and has deposited it in bank in the ward's name, under and subject to the order of the Orphans' Court.                              p. 279

Such discharge, under the express provisions of the statute, terminates the duty and responsibility of the guardian in his fiduciary capacity, and exonerates the surety on his bond.

pp. 278-280

*Decided March 7th, 1916.*

Appeal from the Orphans' Court of Baltimore City.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Washington Bowie, Jr.,* (with whom was *E. King Wilson* on the brief), for the appellant.

*Benjamin L. Freeny* (with whom was *Frederick V. Reinheimer* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

On October 26, 1914, Minnie J. Husted, widow of Edward J. Husted, deceased, was appointed, by the Orphans' Court of Baltimore City, guardian for her son and daughter, Mortimer J. and Marcia T. Husted, the former being nearly nineteen years of age, and the latter in her fifteenth year, at that time. The guardian qualified by giving a bond executed by the appellant company as surety. Shortly after her appointment and qualification there was paid to the guardian the sum of $1,115.72 as the proceeds of certain life insurance of which the wards were the beneficiaries, and in May, 1915, she received from herself as administratrix of the estate of her deceased husband the further sum of $4,223.08 which was distributed to the two children upon the final account of the administration. These funds were deposited with the Fidelity Trust Company of Baltimore, and they constituted the entire assets of the estate. At the expiration of a year from the time of her appointment the guardian filed a petition in the Orphans' Court submitting an account, which showed the amounts and deposit of the principal funds and the receipts and application of interest, and requesting in effect that her guardianship be revoked and that the fund be deposited in bank, subject to the order of the Court, in the individual names of the wards, to the end that the surety on the bond might be relieved of further liability. Upon this

petition an order was passed by the Court authorizing the guardian to withdraw the funds to her credit in the Fidelity Trust Company and deposit them in equal and separate shares in the individual names of the wards in the Central Savings Bank of Baltimore, subject to the order of the Orphans' Court, and that upon such deposit being made and the bank-books in which they were credited being exhibited to the Court, the guardian and her bond should be discharged. In pursuance of this order, and on the day of its passage, the deposits were changed as it provided, and books issued by the Central Savings Bank were submitted to the Court showing that accounts had been opened in the names of the wards individually for the full amounts to which they were respectively entitled. The appellant, as surety on the guardian's bond, has appealed from the order undertaking to discharge the guardian, and the liability of her surety, the theory of the appeal being that the Orphans' Court had no power to pass an order which could effectively accomplish those objects. As the release of the surety from responsibility for any future losses would necessarily result from a valid discharge of the principal obligor, the real and only question to be determined is whether the liability of the guardian was extinguished by the order under review and her compliance with its provisions.

The condition of the guardian's bond, as prescribed by statute, was that if she should "faithfully account with the Orphans' Court, as directed by law, for the management of the property and estate of the infants under her care, and also deliver up the said property agreeably to the order of the said Court or the directions of law," and should in all respects perform the duty of guardian to her wards according to law, then the obligation of the bond should cease. Code, Art. 93, sec. 155. It is provided by section 242 of the Article just cited that the Orphans' Court may in its discretion order "any guardian whom they may have appointed or whose bond they may have approved, to bring into Court, or place in bank, or invest in bank or other incorporated stock,

or any other good security, any money or funds received by such * * * guardian; and the Court shall direct the manner and form in which such money or funds shall be placed in bank or invested, and the same shall at all times be subject to the order and control of the Court." Under the provisions of section 187 of the same article the Orphans' Court "may, in their discretion, upon the application in writing, of any guardian whom they may have appointed, revoke the appointment of such guardian and appoint a new guardian or guardians."

In this case the guardian applied in writing for the revocation of her appointment, and having fully accounted for the estate and having delivered it up as directed by the Court and required by her bond, the application for her discharge was granted. The provisions we have quoted afford ample authority for such action. In granting the discharge, to which the guardian was entitled, and in providing for the deposit of the funds in the names of the wards, the Court was exercising powers which were expressly conferred by statute. The revocation of the guardian's appointment and the placing of the funds in the wards' own names and subject to the order of the Court, after a complete accounting as to the corpus and income of the estate, effectually terminated the duty and responsibility of the guardian in her fiduciary capacity, and equally exonerated the surety on her bond.

It is argued that according to the intent of the statute, as indicated by its terms, the Orphans' Court had no power to discharge the guardian except in connection with the appointment of a new guardian to take her place. The Code provision (Art. 93, sec. 187) to which we have referred, and succeeding sections not heretofore cited, undoubtedly contemplate that the retirement of a guardian will be followed by a new appointment. Section 188 provides that if the guardian whose appointment is revoked shall refuse or neglect within a reasonable time after demand to deliver the property of the ward to the new guardian, the Court may compel such delivery by attachment and direct the bond of the re-

moved guardian to be put in suit; and section 189 contains a provision that the revocation of the guardian's appointment shall be of no effect until the newly appointed guardian shall have signified his acceptance by filing his bond in such amount and with such sureties as the Court shall approve. It is further directed, by section 190, that whenever for any cause the appointment of a guardian shall be revoked, and there is no remaining guardian, a successor of the discharged fiduciary shall be appointed. The purpose of these provisions is obvious and important. They were designed to safeguard the interest of the ward by preserving the liability of the retiring guardian until the transfer of the estate to a duly chosen and qualified successor by whom it could be safely and profitably administered. In order that these objects might be fully realized it would doubtless be the proper course and the plain duty of the Orphans' Court in ordinary cases to continue the guardianship by a new appointment in accordance with the terms of the sections to which we have last referred. But when in the exercise of the broad and co-existent powers conferred by the other statutory provisions we have quoted, and in view of special conditions such as those here disclosed, the Court has made a disposition of the guardianship funds which completely removes them from the custody and control of the guardian who seeks to be relieved, and which adequately protects the interests of the wards, there can be no reasonable ground under such circumstances for denying to the guardian, after he has duly accounted for the administration of his trust, the right to be discharged from further responsibility.

The case of *Griffith* v. *Parks,* 32 Md. 1, has been cited to the proposition that the deposit of the funds in the names of the wards, and the order of the Court discharging the guardian in that event, did not have the intended effect. In that case an order of the Orphans' Court directed the guardian to deposit the funds of the estate in a certain bank in the names of the wards subject to the Court's order, and provided that after he had submitted evidence of such deposit

and proper accounts of his guardianship had been filed, he should be released from further liability. The deposit was duly made but the accounts were never filed. Subsequently the guardian withdrew the funds from bank for investment, under an order of Court passed on his application. The funds were lost by the guardian, and in a proceeding against the estate of a surety on his bond the question arose as to whether the liability of the surety had been released by the deposit of the funds in the wards' names under the Court's order. It was held that in view of the failure to file the accounts for which the order provided, and of the actual continuance of the guardianship with respect to the further disposition of the funds, the surety was not released. In the case now before us a complete accounting was made by the guardian, and the funds have been deposited in the names of the wards as directed by the Court's order, and no act has been omitted which was required by its terms to make the discharge effective.

In our opinion the Orphans' Court of Baltimore City had full authority and jurisdiction to pass the order now under review and it will therefore be affirmed.

*Order affirmed, with costs.*